UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
JUS BROADCASTING CORPORATION,  :

        Plaintiff,                     :    20 Civ.

    - v. -                          :

HARVINDER RIAR,                   **JURY TRIAL**
                                :   **DEMANDED**
    Defendant.
------------------------------------------------------------x

## COMPLAINT

Plaintiff JUS Broadcasting Corporation ("JUS Broadcasting"), by and through its attorney, Paul Batista, P.C., for its Complaint against defendant respectfully alleges as follows:

### Introduction and Summary

1. This is an action for damages and injunctive relief based on a pattern of illegal, deceitful and malicious conduct by defendant Harvinder S. Riar ("Riar"), a former key employee of plaintiff. As described in greater detail in the balance of this Complaint, defendant Riar, among other things, (1) has engaged in blatant breach of every material term of his employment contracts with plaintiff, (2) tortiously interfered in existing contract and business relationships of plaintiff, (3) established a satellite broadcasting company and other media outlets directly competitive with plaintiff in flagrant violation of defendant's contractual obligations, (4) recently started to broadcast programming that is identical in every respect, including its name, to programming that plaintiff has been broadcasting for many years, including a show entitled "Mudda," an immensely popular program belonging to plaintiff which defendant has replicated in every respect, including its important title, (5) created a newspaper, newsletter and other

1

publications that impermissibly exploit plaintiff's image, media presence, trade dress and identity, (6) has stolen and continues to steal plaintiff's advertisers and subscribers and the revenue derived from those advertisers and subscribers, (7) maliciously and falsely disparaged plaintiff, its management, and its employees, (8) embezzled substantial amounts of cash and funds belonging to plaintiff, and (9) taken aggressive and unjustified steps to destroy JUS Broadcasting's business.

2. Among defendant's many illegal acts, as articulated more fully later in this Complaint, he violated the employment contracts and his fiduciary duties to plaintiff by impermissibly missing lengthy periods of time from the performance of his duties because, among other things, Riar is and has been an acute and untreated alcoholic in violation of explicit "good conduct" terms of the contracts.

### The Parties and Non-Party

3. JUS Broadcasting is a corporation principally engaged in the business of satellite distribution of entertainment, current events and other programming, including the immensely popular "Mudda" show, to thousands of subscribers in the United States, Canada and elsewhere. Since the start of their programming in 2007, JUS Broadcasting and its affiliates (collectively sometimes identified in this Complaint as "JUS Entities") have become the largest and most visible of broadcasters serving the Indian-language populations of North America.

4. Non-party Penny K. Sandhu was and is the creator, organizer, manager, owner and control person of plaintiff JUS Broadcasting and all of its affiliated JUS Entities.

5. Defendant Riar, who resides at 9 Sumutka Court, Carteret, New Jersey 07008, was employed as an "on-air" personality and sales person for plaintiff and its JUS Entities pursuant to two separate contracts – one relating to Riar's role as a broadcaster and the other to his role as an executive in sales of the services of the Jus Entities.

## Jurisdiction and Venue

6. This court has jurisdiction over defendant Riar pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. Plaintiff, together with its affiliates, is a New York corporation with its principal place of business in Long Island City, New York, and Ms. Sandhu is a resident of Nassau County, New York. Defendant Riar resides in New Jersey. The amount in controversy exceeds $75,000 and is in fact substantially higher.

7. Venue in this Court exists pursuant to 28 U.S.C. § 1391.

## Statement of Facts Common to All Counts

*A. The Talent Agreement with Riar*

8. Plaintiff JUS Broadcasting and defendant Riar entered an "Employment Agreement" on March 1, 2013. The most recent version of the agreement was entered into on March 1, 2018 (the "Talent Agreement").

### *(i) The Parties to the Talent Agreement and Their Contractual Role*

9. Under the Talent Agreement, JUS Broadcasting, designated as the "Employer," and Riar, designated as the "Employee," agreed that "Employee shall provide employment services . . . for the benefit of Employer and any affiliated entity for which Employee may be designated duties by the Employer . . . . Such entities shall include any entity now or hereafter controlling, controlled by or under common control with Employer, including but not limited to JUS Punjabi, LLC, a New York limited liability company, JUS One Corp., a New York corporation, JUS News Corp., a New York corporation, JUS Foundation, a New York corporation, JUS 24X7 Corporation, a New York corporation, JUS NOW Corporation, a New York corporation, and JUS Khabarnama Corporation, a New York corporation . . . ."

*(ii) Riar's Obligations under the Talent Agreement*

10.     As explicitly provided by the Talent Agreement, plaintiff JUS Broadcasting "employ[ed]" Riar and Riar "accept[ed] employment to render and furnish artistic and professional services to the JUS Entities as on-air talent to perform . . . duties and functions . . . and such other or different duties as may reasonably be assigned to Employee by any of the JUS Entities. All of [Riar's] services and duties . . . shall be performed where the Jus Entities require, and shall be subject to the terms of this Agreement and the JUS Entities' direction and control."

11.     The Talent Agreement in addition obligated Riar to observe and obey a range of standards of conduct. More specifically, the agreement provided under the title "Termination for Cause:"

> Employer may terminate this Agreement and Employee's employment for Cause, as hereinafter defined, with or without notice, at any time. If [defendant Riar] is terminated for Cause . . . Employee shall not be entitled to any severance or other payment whatsoever. The term "Cause" shall include, but not be limited to, the following: (1) [Riar's] continued incapacity for one (1) week or more, or for ten (10) or more Programs in the aggregate during any fifty-two (52) week period . . . The term "incapacity" shall mean (1) any physical, mental, or other disability rendering [Riar] incapable of fully performing the services to be performed by Employee hereunder; (2) willful, habitual, or substantial neglect of duties by Employee; (3) any material breach of this Agreement; (4) dishonesty, theft, misappropriation, embezzlement, fraud or similar intentional misconduct by Employee involving any of the JUS Entities; (5) repeated use of any controlled substance, drug or alcohol that, in the . . . opinion of Employer's management[,] renders [Riar] unfit to serve as an Employee of the JUS Entities, (6) unethical business conduct; (7) actual or threatened violence against another employee or sexual or other prohibited harassment of others; (8) failure to perform duties . . . or failure or refusal to comply with any of the JUS Entities' rules, policies, procedures, or directives . . . ; (9) insubordination or failure to work in a harmonious manner with management or other employees . . . .; (11) excessive absenteeism or tardiness; and (12) Employee's failure or refusal to perform the services required of Employee . . . for a period

4

of two (2) or more days for reasons other than vacation, illness, accident, injury, incapacity or authorized leave of absence.

12. The Talent Agreement also provided clear and explicit provisions relating to Riar's obligations of "exclusivity and non-competition." In relevant part, the contract provided:

> (a) While an employee of any of the JUS Entities, Employee agrees to devote Employee's full working time, attention and best efforts to the business of the JUS Entities and shall furnish Employee's services exclusively to the JUS Entities. Employee further agrees that during the Term Employee shall not, without Employer's prior written consent, perform any on-air talent services or other services . . . for any other person or business entity whatsoever, or discuss any further employment with any third party . . . .
>
> (b) During the Term of this Agreement, and at all times that Employee is employed by any of the JUS Entities, Employee shall not, directly or indirectly, on Employee's own behalf or as an individual proprietor, partner, shareholder, owner, officer, employee, director, consultant, agent, joint venturer, investor, lender or in any other capacity whatsoever . . . do any of the following without Employer's prior written consent:
>
> (i) Offer to provide or provide products or services which compete with the products and services offered by the JUS Entities; or
>
> (ii) Engage in any of the television, radio, internet, news and entertainment industry services, programs and business activities in which the JUS Entities are involved.

13. Other relevant provisions of the Talent Agreement prohibited solicitation activities by Riar that conflicted with his duties to plaintiff. Under the title "Non-Solicitation," the contract in relevant part stipulated:

> During the Restricted Period . . . Employee agrees that Employee shall not, directly or indirectly, on Employee's own behalf or as an individual proprietor, partner, stockholder, owner, manager, officer, employee, director, consultant, agent, joint venturer, investor, lender, or in any other capacity whatsoever do any of the following:

5

>   (i) Interfere with or disrupt, or attempt to interfere with or disrupt, the relationship of any of the JUS Entities with any sponsor, advertiser or Customer . . . or any licensee, station, network, cable operator, media outlet or other platform through which the channels and Programs of the JUS Entities are broadcast and/or distributed;
>
>   (ii) Solicit, offer, hire or assist any other person or entity in hiring or attempting to hire any Restricted Person . . . or otherwise induce any Restricted Person to discontinue their employment or business relationship with any of the JUS Entities; or
>
>   (iii) Call on, solicit business from or assist others to solicit business from any of the sponsors, advertisers of Customers of the JUS Entities as to any product or service that competes with any product or service provided or marketed by or actually under development by any of the JUS Entities.

B.   *The Sales Manager Agreement between Plaintiff and Riar*

14.   In addition to the Talent Agreement, defendant Riar has been a party to an Employment Agreement with Jus Broadcasting since 2013 relating to his services as the "Sales Manager" of Jus Broadcasting and the related JUS Entities. Like the Talent Agreement, the most recent version of "Employment Agreement" (the "Sales Manager Agreement") was dated March 1, 2018. As demonstrated in greater detail later in this Complaint, defendant Riar has violated every provision of the Sales Manager Agreement, just as he has breached every material aspect of the Talent Agreement.

### *(i) The Parties to the Sales Manager Agreement and Their Roles*

15.   The parties to the Sales Manager Agreement are Riar and JUS Broadcasting together with its affiliated JUS Entities.

16.   Defendant Riar was specifically designated as the "Sales Manager" and his "duties" included, *inter alia*, (A) "[p]reparing and [d]elivering sales presentations to new and

6

existing customers," (B) "sell[ing] new advertising programs," and (C) "protect[ing] and increase[ing] existing advertising."

17. In addition, the Sales Manager Agreement explicitly required defendant Riar, among other things, to (A) meet "potential customers" and (B) maintain "assigned account bases while developing new accounts."

### (ii) The Duration and Termination of the Sales Manager Agreement

18. In relevant part, the Sales Manager Agreement provided:

> Employer may terminate the Agreement without Cause or for Cause (as hereinafter defined), with or without notice, at any time. Upon termination, Employee shall . . . not be entitled to any severance or other payment whatsoever. The term "Cause" as used herein shall include, but not be limited to, the following: (1) Employee's continued incapacity for one . . . week or more during any fifty-two . . . week period, or beyond the period provided in the Family and Medical Leave Act, if applicable. . . . The term "incapacity" shall [also] mean any [1] physical, mental or other disability rendering Employee incapable of fully performing the services required to be performed by Employee hereunder; [2] willful, habitual or substantial neglect of duties; [3] any material breach of this Agreement; [4] dishonesty, theft, misappropriation, embezzlement, fraud or similar intentional misconduct by Employee involving any of the JUS Entities; [5] repeated use of any controlled substance, drug or alcohol that, in the reasonable, good faith opinion of Employer's management [ ] renders Employee unfit to serve as an Employee of the JUS Entities; [6] unethical business conduct; [7] actual or threatened violence against another employee or sexual or other prohibited harassment of others; [8] failure to perform duties hereunder or refusal to comply with any of the JUS Entities' rules policies, procedures, or directives after receipt of written notice of such failure and Employee's failure to cure such failure within a cure period reasonably afforded by Employer; [9] insubordination or failure to work in a harmonious manner with management or other employees; [10] any violation of FCC rules and regulations, including[,] without limitation, rules relating to indecency, payola [or] plugola; [11] excessive absenteeism or tardiness; and [12] Employee's failure or refusal to perform the services required of Employee under this Agreement.

7

19.     The Sales Manager Agreement also contained provisions on "exclusivity" and "non-competition:"

>       (a) While an employee of any of the JUS Entities, Employee agrees to devote Employee's full working time, attention and best efforts to the business of the JUS Entities and shall furnish Employee's services exclusively to the JUS Entities. Employee further agrees that during the Term Employee shall not . . . perform any services, duties or functions . . . for any other persons or business entity whatsoever.
>
>       (b) During the Term of this Agreement, and at all times that Employee is employed by any of the JUS Entities, Employee shall not, directly or indirectly, on Employee's own behalf or as an individual proprietor, partner, shareholder, owner, officer, employee, director, consultant, agent, joint venturer, investor, lender or in any other capacity . . . any of the following . . . (;) [m]arket, sell, offer to provide products or services which compete with the products and services offered by the JUS Entities; or [ii] [e]ngage in any of the television, radio, internet, news and entertainment industry services, [p]rograms . . . and business activities in which the JUS Entities are involved.

20.     In addition, the Sales Manager Agreement contains confidentiality provisions obligating him to "keep all Confidential Information . . . in trust for the use and benefit of the JUS Entities . . . ."

21.     The Sales Manager Agreement has a term of five years, from February 28, 2013 through March 1, 2018, renewable in 2018 for five years – provisions also applicable to the Talent Agreement.

## COUNT I
## [For Breach of Contract]

22.     Plaintiff repeats and realleges each and every allegation of ¶¶ 1-21, *supra*.

23.     In breaching every salient provision of both the Talent Agreement and the Sales Manager Agreement, defendant Riar has, among other things:

>       (1) Established his own broadcasting network;
>
>       (2) Repeatedly embezzled and stolen funds from the JUS Entities;

8

(3) Failed and refused to perform his duties under both the Talent Agreement and the Sales Manager Agreement;

(4) Established a newsletter and social media platform that substantially replicates the content, public image. format and trade dress of plaintiff JUS Broadcasting and the JUS Entities;

(5) Solicited and obtained customers and consumers from plaintiff and the JUS Entities;

(6) Failed on numerous occasions to appear for work and the performance of his duties under both the Talent Agreement and the Sales Manager Agreement;

(7) Consumed to the point of impairment alcohol and is in fact a habitual alcoholic;

(8) Failed to appear for work on a full-time basis because he has devoted significant amounts of his time to unsuccessful campaigns for political office and, upon information and belief, diverted and stole funds from plaintiff and the JUS Entities in order to fund political activities not authorized by either of the agreements at issue;

(9) Obtained illegally in violation of both agreements' good conduct provisions, a New York driver's license after the suspension of his New Jersey license;

(10) Provided to others confidential information belonging to plaintiff and the JUS Entities;

(11) Disseminated information to third parties in an effort to damage and destroy the JUS Entities and to deprive Ms. Sandhu of her livelihood, including the fact that he recently created and is broadcasting, among other things, a program entitled "Mudda," an immensely popular program created more than thirteen years ago by plaintiff and broadcast internationally by JUS Broadcasting since its creation;

(12) By replicating the name, programming and all other aspects of "Mudda," defendant has extensively diverted advertising and other revenue from JUS Broadcasting and deliberately created mass confusion in the marketplace; and

(13) Intimidated and threatened other employees of plaintiff and the JUS Entities.

24. By reason of the foregoing, defendant Riar has damaged plaintiff in an amount to be determined at trial and believed to exceed $15 million.

### COUNT II
### [For Tortious Interference in Contract and Business Relations]

25. Plaintiff repeats and realleges each and every allegation of ¶¶ 1-24, *supra*.

26. As alleged in greater detail in ¶ 23, *supra*, plaintiff Riar has tortiously interfered in plaintiff's contract and business relations with plaintiff's and the JUS Entities' relationships with their advertising customers and consumers.

27. By reason of the foregoing, defendant Riar has damaged plaintiff JUS Broadcasting and the JUS Entities in an amount to be determined at trial and believed to exceed $15 million.

### COUNT III
### [For Breach of Fiduciary Duty and Conflict of Interest]

28. Plaintiff repeats and realleges each and every allegation of ¶ 1-27, *supra*.

29. Defendant Riar breached his fiduciary duties of loyalty and good faith to plaintiff JUS Broadcasting and the JUS Entities.

30. By reason of the foregoing, defendant Riar has damaged plaintiff in an amount to be determined at trial and believed to exceed $15 million.

### COUNT IV
### [For Unjust Enrichment]

31. Plaintiff repeats and realleges each and every allegation of ¶¶ 1-30, *supra*.

32. Defendant Riar has unjustly enriched himself.

33. By reason of the foregoing, defendant Riar has damaged plaintiff JUS Broadcasting and the JUS Entities in an amount to be determined at trial and believed to exceed $15 million.

## COUNT V
### [For Business and Commercial Disparagement]

34. Plaintiff repeats and realleges each and every allegation of ¶¶ 1-33, *supra*.

35. Defendant Riar has repeatedly disparaged the JUS Entities.

36. By reason of the foregoing, defendant Riar has damaged plaintiff in an amount to be determined at trial and believed to exceed $15 million.

## COUNT VI
### [For Temporary, Preliminary and Permanent Injunctive Relief]

37. Plaintiff repeats and realleges each and every allegation of ¶¶ 1-36, *supra*.

38. Plaintiff lacks an adequate remedy at law.

39. Unless restrained, defendant Riar will continue all of the illegal activities alleged in this Complaint, including the destructive broadcasting of his false, misleading and fraudulent program entitled "Mudda."

WHEREFORE, plaintiff demands judgment against defendant Riar and his co-conspirators and aiders and abettors as follows:

- Compensatory damages in an amount to be determined at trial but believed to exceed $15 million;

- Temporary, preliminary and permanent injunctive relief requiring Riar to cease and eliminate all broadcasting in all media of "Mudda" and all programming which copies, replicates or is modeled on any and all programming of the JUS Entities;

- Punitive damages in the amount of $30 million to be determined at trial; and

- Such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 15, 2020

PAUL BATISTA, P.C.

By: _____
    Paul Batista
    Attorney for Plaintiff
    JUS Broadcasting Corporation
    26 Broadway – Suite 1900
    New York, New York 10004
    (631) 377-0111 (Tel)
    (212) 344-7677 (Fax)